My name is Peter Schweda. I represent Eugene Brown, the appellant and defendant in this matter. And this case presents two questions. One, whether there was sufficient evidence to impose an enhancement for using or possessing a firearm during the commission of another felony, in a felony possession charge. And, two, whether the enhancement would require proof beyond a reasonable doubt and or by a jury. Your Honor, the facts in this case show that Mr. Brown was driving southbound on Division Street when he went around Damien Crawford. Mr. Crawford was in the process of trying to change lanes, and at the next stoplight, Mr. Crawford gave him, in his words, a few choice words. The light turned green. The two proceeded southbound on Division Street. Mr. Crawford was not making much effort to catch up with Mr. Brown. He now had to roll down his passenger window, which was a manual window, so he had to lean over to roll it down, and in Mr. Crawford's words, I let him have it. He wasn't done with him yet. At that point, the defendant pulled out a handgun and stated that you were lucky that you had your kid with you, homie. The gun was not pointed, according to Mr. Crawford, was not pointed at Mr. Crawford or his three-year-old son, who was in the backseat of the Crawford vehicle. Mr. Crawford on this evening made three calls, three 9-1-1 calls, and it's significant that in all three calls, there's six references to the gun in the three 9-1-1 calls. They, in the first call, there's one reference to he pulled a gun. In the second call, there's two references to he pulled a gun on me, and in the third call, there's three references to he pulled a gun on me, and none of these references did Mr. Crawford say that a gun was pointed. And so the issue comes down to whether this is sufficient to be a second-degree assault or whether it's display of a firearm in a threatening manner. And we would submit, Your Honor, that, Your Honors, that it should only be the misdemeanor version. So the ---- What piece is missing? Take the assault charge, and we're hypothetical here because he didn't go to trial on assault, but at this stage, that's what we're going to be trying to deal with. And what element of assault do you think was missing? I think the cases in Washington are clear that you have to, in this type of situation, you have to have a pointing of a ---- the pointing of the gun would be the element that would be necessary. In other words, a pointing of the gun at Mr. Crawford. The government cites the Karp case in their brief, and the Karp case in turn cited a Murphy case in which the court reversed a second-degree assault conviction where two air pollution control authority officers met up with a person that held a gun, and the gun was just held by his side and held down. And in that case, they reversed the conviction and said that the instruction was poor because it didn't distinguish between menacing behavior and violence with a gun. Well, it seems to me, when I look at your brief, for example, you cite the Ward case, and it makes reference to what can be inferred from pointing a gun, what can't be inferred from mere display of a gun. Well, here, it's not like just display in the context where somebody may just have a gun that's there on the scene during the whole event. You've got somebody who's pulled out a gun and is waving it around. That does suggest some degree of menace or intent to intimidate, because otherwise, you don't have to actually aim at somebody in order to let them know, hey, I've got this here, I might use it. Correct, Your Honor. I agree with you, but you need to have more than just a gun, and there's no evidence that he was waving the gun around. There's just evidence that he pulled the gun out. Well, if you pull it out, it means you're intending to bring it into the event. Again, it's not something that's already on the scene. You're introducing this gun into the dialogue with the other guy. Now, it may be accompanied by language and other indications that you have no intent to use it, but the fact that somebody voluntarily introduces a gun into a discussion suggests to me it's not mere happenstance. It's not because it was making his back pocket uncomfortable. He's trying to let the other guy know, hey, I've got a gun. Correct. What's the purpose of that? Well, the purpose of it would be just the display of the gun. No, he's not saying, hey, this is a cool gun. See, it's got a silver barrel and so forth. He's not displaying it for some innocent purpose. You're displaying it because you want to let the other guy know, hey, I've got a gun. Correct. But one of the elements of the display of the gun is that you're trying to intimidate someone else. Well, why else does he pull it out? Pardon? What other reason is there? It seems to me if the element that's missing is the intent to intimidate, it doesn't seem like a real stretch to think that somebody who pulls out a gun and introduces it to the discussion is trying to intimidate. There really is no other reason to bring the gun out. Well, I would beg to differ, Your Honor. I think the display of the weapon charge includes an element that you're trying to intimidate another person with the display of the gun. The cases are clear in Washington. Well, I accept that. What other reason did he have to pull the gun out? I mean, is that a hard inference to make, that if you pull a gun out and introduce it into the discussion, you're trying to intimidate? Well, I guess the question is if you intimidate, do you have to have, does the other person have to have some apprehension that you're going to do something? I mean, is that the second part of it? Yes, it is, Your Honor. And in this case, it was clear that Mr. Crawford said that he wasn't intimidating. He said... Sort of remarkably, when I read the testimony, I mean, I think most people would be scared out of their mind, but he said, well, he wasn't all that scared and he kept driving and... Kept following him. Kept following the guy, even though his son was in the car. But so the precise error that you think the district court made is what? That there's insufficient evidence to find that he committed a felony when he possessed the gun. There was sufficient evidence to prove that he displayed the gun under the display statute or the intimidation with a weapon is what we used to call it when I was a deputy prosecutor. There was sufficient evidence to do that. And that's not enough to get the four-level enhancement. So the intimidation with... If there were intimidation with reasonable apprehension of fear, that would be sufficient? For the misdemeanor. I think you have to have more... You have to... Washington says you can infer secondary assault if you point the gun. In the car case that's cited by the government, the man pointed the gun at the paramour of his ex-wife who was nude in bed. Well, didn't the judge find that the gun had been pointed not at the person, but at the car? No. In fact, we point out, Your Honor, that Judge Nielsen changed the pre-sentence report to show that the gun wasn't pointed, that he made a correction in the pre-sentence report to show that it was just displayed. I mean, he makes that finding in response to an objection we made. Your Honor, if I may go to the second issue. And I know that I understand the Rescrepro case and what it stands for and the weighing. But I would like to call the Court's attention to what I believe is a very unsettled law before the United States Supreme Court in this case. And I'm aware, Your Honor, Judge McKeon is on the in-bank panel on Cefalo and McCarty, which is still outstanding. I want to point out... Everybody in that panel, we've seen your status before tonight. Your Honor, I think that the cases that have come down don't answer the question that's here, which is where you have a level of, if this circuit gets to the point where we have a presumption of a reasonable sentence, if you sentence within the guidelines, we still haven't answered the question of how do you get to that guideline and is it okay to just do it by preponderance of the evidence. And I think the most significant thing that I can point out about the Cunningham case and the Rita case is the opinion by Justice Kennedy in which Justice Breyer concurs. And in that case, Justice Kennedy said that there is a principled rationale for following the Apprendi line of cases where we're dealing with things such as whether a weapon was used, violence employed, a stated amount of drugs or other contraband was involved, and that we could use a lesser or a preponderance rule if we're talking about factors that are related to the defendant, such as convictions or cooperation and those kind of things. And I guess there's no case in front of the Supreme Court right now that answers this question. And the Gall case deals with reducing a sentence. And the other, the Kimbrough case. So let me just get it straight because, although it's hard to do with all these sentencing permutations, but Cunningham says if you have somebody who, for whom the penalty is increased beyond the statutory maximum, that has to go to the jury, those facts, correct? Okay. We don't have that situation here. I would submit that we do. If this circuit employs a presumption that a reasonable sentence is, there's a presumption that a sentence is reasonable because it's within the guideline range. But if there is no presumption and it's an advisory guideline range, then where does Cunningham, you don't land in Cunningham, correct? I would still submit we do, Your Honor, because the second part of that argument is that you have to look at what the Supreme Court is doing with these cases, too. I would submit that. But what it did was Booker. And Justice Alito's dissent in Cunningham says, hey, there's no difference. But I don't see anything in the majority of Cunningham that suggests the court is looking to unwind Booker. I think where the signal that we need to look at, Your Honor, is in two places. One is the concurring opinion by Justice Kennedy in which Justice Breyer, the author of the remedial opinion in Booker, he is saying, in Booker he's saying judges can make these findings. Remind me in that case, do you need the concurring opinion to make a majority? In Booker? No, not in Booker. You're talking now about?  Cunningham. Yes, well, I don't recall, Your Honor. You need a Venn diagram to figure out who's on first sometimes with all the concurring opinions. But it matters in that typically each of them is trying to bolster their opinion from one of the prior cases where they thought things should or shouldn't go. But if there is a majority, we have to kind of stick with that majority. Well, I can tell you this, that you have Justice Kennedy and Justice Breyer, two of the members of the remedial majority, stepping back and saying, hey, wait a minute. There is a principled, reasonable way to still let the Apprendi line of cases go and still allow the advisory guidelines and judges' discretion in sentencing matters. And I think the second thing that I think is significant is that people seem to think that Rita answered the question about presumption of reasonable sentences. But if you look at it, there's only four judges that concur in Section 2 of the Rita case. You have Justice Ginsburg concurring with Justice Stevens. You've got Justice Scalia with whom Justice Thomas concurs with. And finally, you have Justice Souter. So you have five judges who leave this question open. And we would submit that when, at the end of the day, when this issue comes before the Supreme Court, the Supreme Court is going to say what Justice Kennedy said in his concurring opinion in the Cunningham case. All right. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Mr. Shweda. My name is Matt Duggan. I'm a Special Assistant U.S. Attorney for the Eastern District of Washington. My main employment is with the Spokane County Prosecutor's Office. I'm here on behalf of the United States today. Your Honor, I'd like to present my argument in the reverse and first deal with the Cunningham case that Mr. Shweda spoke of. Can I just ask you a question? It doesn't have to do with your case. Is that a special program between the Prosecutor's Office and the U.S. Attorney? Yes, Your Honor. I am cross-deputized in both the Federal Court and the Spokane County Superior Court. The brunt of my work, most of my work, is with the Spokane County Prosecutor's Office. Your Honor, in addressing the Cunningham case, I don't believe that case applies in this situation. And the reason I don't believe it applies is because in that case, the Court held that where a judge must make a finding at the sentencing level that certain facts have occurred in order to increase the sentence, the Sixth Amendment is not satisfied. Increase the sentence above the statutory maximum. Correct. Above the statutory maximum. Okay. And because the guidelines are now advisory, the sentencing court in this case could have given Mr. Brown the 103-month sentence that it gave to Mr. Brown without making the finding that he committed second-degree assault with a firearm. So I don't believe Cunningham applies in this case. Moving on to whether or not Mr. Brown committed second-degree assault, Mr. Schweda indicates in his brief that display of a firearm or unlawful display of a firearm is a lesser-included offense in the state of Washington of a greater offense of second-degree assault with a firearm. And that's correct. When you look at those cases, they do state that if you point a gun at another individual, that does satisfy the second-degree assault requirement. It does not, however, state that that is required. It just says that that's enough if the firearm is pointed at the other individual. There are cases that say a second-degree assault can exist under lesser circumstances where a defendant has displayed a firearm and aims that display at a particular victim. Let's go back to the same question I was trying to cover before. Let me go straight to it. I understand the form of assault which is alleged here because there are, under Washington law, common law, three types of assault. The one that's at issue here is what you identify as the third in your brief, common law assault, i.e., putting another in apprehension of harm whether or not the actor intends to inflict or is capable of inflicting that harm. What evidence is there that the victim here or the alleged victim was in apprehension of harm? Your Honor, the evidence that shows he was in apprehension of harm is when he sees that this gun is pointed directly at him or not directly at him but at his car, he indicates that he had his son in the car. He testified at the sentencing hearing that if that gun were fired, he said, I'm not saying that it would have hit me, but he doesn't also say I'm claiming it wouldn't have hit me. He said it may have hit my car, it may have hit some other people on the street. So that's where his fear is. But that's the evidence. It's almost like the absence of harm as to him and his son. Well, I mean, the apprehension of the fear or the apprehension of harm has to be as to the victim or some person, correct? Some specifically focused individual as opposed to a general menacing behavior towards a... Right. So what happens when he says, well, it might have hit the car or some other person on the street? Then wouldn't you at least need factual findings that it would have hit him or he reasonably believed it would have hit him or his son? I think that would be sufficient, Your Honor, but I don't... We don't have that. We have the opposite of that. I don't think that's required. I think the fact that he believes that firearm, if fired, would have hit his car... If fired is key. Did he reflect? I mean, I'll accept that maybe his testimony showed bravado and bravery and so forth, and that doesn't deny the possibility that it had apprehension. But I think you need some evidence of apprehension, and with that, I think you need some kind of finding. Now, it may be that the discussion was focused on something else, but when I look at what the district court said when we reached this conclusion here, he talks, as I see it entirely, about the intent of Mr. Brown to put fear into the heart of the other driver, but doesn't talk about whether the other driver actually experienced some apprehension or fear, which, as I understand it from what we just talked about, is an element of that common law assault. It is, Your Honor. There are basically two requirements. One focuses on what is in the mind of the defendant. He must intend to put that fear in the victim. The other is what the victim must feel, and you're correct. He must feel some apprehension or thought. So I'd like to really focus on that because that's the piece I'm really not sure of. I mean, speaking only for myself, I can accept that there's evidence and the judge made a finding about the intent of Mr. Brown, and there's some evidence that speaks to that. There is no finding that I can see with regard to the fear or the apprehension suffered, and so that's what I'd like for you to try to focus on and tell me if there is a finding someplace that I've missed or what evidence would support that finding. Yes, Your Honor, and part of this, before I go into that, briefly goes back to these sentencing guidelines being advisory and the fact that the court need not even make a factual finding, even though it did. That's true, and I'm not saying the judge couldn't impose this sentence, but the way we approach it is we require the district court to make the calculation and to impose sentence, although not bound by that, to be informed by the calculation. And so I think our case law is that if there's an error in the calculation, that means it goes back, even though, you're right, the district judge may well get to exactly the same point through another route. Your Honor, I think when you look at all of the circumstances in this case and you look at the 911 calls that Mr. Crawford placed after this incident happened, he did follow Mr. Brown, which may not have been the wisest choice. He does follow him at somewhat of a distance, but when you look at the context of the 911 calls that Mr. Crawford made after this incident happened, I think that is one of the factors that lends to his apprehension that some harm may have occurred. He could have just left the scene and not reported this if he didn't feel any apprehension, but I think when you look at all of the factors, it's easy to see the apprehension that Mr. Crawford felt when this gun was pointed in his direction. Your Honor, if the court doesn't have any more questions, I'll do it. Thank you very much. Yes. Two points. Your Honor. You need to be here at the podium so it can be recorded. Sorry. Two points. One is there is no finding in the record that Mr. Crawford was in fear, and in fact, at page 118 of the excerpts of the record, he basically is asked, you weren't afraid of Mr. Brown because you continued to follow him, correct? His answer is no. Well, I mean, I shouldn't say I was scared for my life, but, yeah, I did follow him because, and then he goes on. The second point is that the 103-month sentence that was given by Judge Nielsen was within the enhanced guideline. It was within the heartland of the sentencing guidelines, but only because it was enhanced by Judge Nielsen. So the point is that without that enhancement and the proper proof of that enhancement, this matter should be reversed and remanded. Thank you. Thank you for your argument this morning to both counsel. The case just argued of the United States v. Brown is submitted and will adjourn for the morning. All rise. This court for this session stands adjourned. Thank you.
judges: McKeown, Clifton, Schwarzer